**In the United States District Court
for the District of Kansas**

───────────

Case No. 23-cv-04029-TC-TJJ

───────────

JANAE WOLLENBERG, ET AL.,

*Plaintiffs*

v.

BLUE CROSS AND BLUE SHIELD OF KANSAS, INC.,

*Defendant*

───────────

**MEMORANDUM AND ORDER**

Plaintiffs filed this putative class action in Kansas state court, seeking relief from Blue Cross and Blue Shield of Kansas, Inc. Doc. 1-1. Blue Cross removed to federal court. Doc. 1. Plaintiffs seek remand to state court, Doc. 10, and Blue Cross asks that their complaint be dismissed, Doc. 13. For the following reasons, Plaintiffs' motion is denied. Blue Cross's motion is granted in part and denied in part.

**I**

**A**

**1.** Federal courts have limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see* U.S. Const. art. III, § 2. For federal district courts, that means they may not exercise judicial power absent statutory authority to do so. *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (quoting *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 552 (2005)). Consequently, there is an ongoing and independent obligation to ensure that subject-matter jurisdiction exists in every case, *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 438 (2011), requiring prompt dismissal or remand in any "proceeding[ ] in which it becomes apparent that jurisdiction is lacking." *Penteco Corp. v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir.

1991) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)).

The party invoking the federal court's jurisdiction bears the burden of establishing by a preponderance of the evidence that jurisdiction is proper. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014); *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013). Congress has given federal courts jurisdiction to hear two general types of cases: those that "arise under" federal law, 28 U.S.C. § 1331, and those between completely diverse parties where the amount in controversy exceeds $75,000, 28 U.S.C. § 1332(a). *See also Home Depot*, 139 S. Ct. at 1746; *Allapattah Servs.*, 545 U.S. at 552.

For suits initially filed in state court, Congress permits removal to federal court only in certain situations. *See generally Lincoln Prop. Co. v. Roche*, 546 U.S. 71, 83 (2005). Specifically, a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction ... to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The party seeking removal must provide "actual proof of jurisdictional facts." *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008). Normally, any doubts concerning remand should be "resolved against federal jurisdiction." *Bd. of Cnty. Comm'nrs of Boulder Cnty. v. Suncor Energy*, 25 F.4th 1238, 1250 (10th Cir. 2022) (quoting *United States ex rel. King v. Hillcrest Health Ctr., Inc.*, 264 F.3d 1271, 1280 (10th Cir. 2001)). But "no antiremoval presumption attends cases invoking CAFA," the Class Action Fairness Act. *Dart Cherokee*, 574 U.S. at 89.

**2.** To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement … showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the

claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

Ordinarily, a motion to dismiss is decided on the pleadings alone. But "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation marks omitted).

**B**

Plaintiffs are teachers with Blue Cross Blue Shield of Kansas health insurance policies. Doc. 1-1 at ¶ 6–8.[1] Those policies cover preventive health services. *Id.* at ¶ 12. And they refer outward to preventive service policy guidance from the United States Preventive Services Task Force and federal agencies. *Id.* (referencing the Centers for Disease Control and the Health Resources and Services Administration). This policy guidance is periodically updated. Doc. 1-1 at ¶ 13. Thus, Plaintiffs' policies evolve as external guidance evolves.

That evolutionary process takes time, though. Blue Cross "has implemented a policy that when guidance is updated [it] does not immediately begin covering preventive services." Doc. 1-1 at ¶ 17. Instead, it incorporates new opinions "within one year of the date they are

---

[1] All document citations are to the document and page number assigned in the CM/ECF system.

published, to be effective by the beginning of the benefit period following that year from the date of release." *Id.*

Plaintiffs say that this delay breaches a portion of their insurance contracts. Doc. 1-1 at ¶ 17. The relevant contract language is as follows:

> **Preventive Health Benefits:** Each Insured is eligible to receive the following preventive services paid at 100% of the allowable charge when received from a Contracting Provider for preventive (i.e., not diagnostic or treatment) purposes. Preventive Health Services received from a Non-Contracting Provider will be subject to the cost sharing requirement (including copayments, coinsurance and deductible), applicable hereunder, in a manner consistent with 42 U.S.C. 300gg-13….
>
> A list of the preventive services covered under this section is available on our website at www.bcbsks.com, or will be mailed to You upon request. You may request the list by calling the Customer Service number on Your Identification Card.

Doc. 1-1 at ¶ 12.

Relying on this section, Plaintiffs received colorectal cancer screenings. Doc. 1-1 at ¶¶ 20, 33, 38. Such screenings were newly recommended "for adults aged 45 to 49 years." *Id.* at ¶ 18 (citing Task Force guidance). But Blue Cross did not pay for them in full, because it "delay[ed] the implementation of coverage to the next benefit period." Doc. 17 at 4; Doc. 1-1 at ¶ 58. In other words, the screenings occurred after they had been recommended by the U.S. Preventive Services Task Force, but before they were implemented by Blue Cross. Doc. 13 at 1; Doc. 17 at 3.

Plaintiffs sued in state court, on behalf of themselves and a putative class. They argued that Blue Cross "breached its contracts with Plaintiffs and putative class members" when "it failed to cover the services at 100% of the allowable charge." Doc. 1-1 at ¶¶ 43, 59. They also sought a declaratory judgment that Blue Cross "must cover preventive services at 100% for contracting providers." *Id.* at ¶ 64f.

Blue Cross removed the state-court suit to federal court, asserting that a federal court would have jurisdiction under the Class Action Fairness Act. Doc. 1 at 2–6. This prompted Plaintiffs to move for

remand back to state court. Doc. 10. Blue Cross opposes the motion for remand. Doc. 16. Instead, it asks that Plaintiffs' complaint be dismissed. Doc. 13. It argues that they fail to state a claim, lack standing, failed to exhaust their claims, and improperly assert moot claims. *See id.*

## II

Two motions are pending. In the first, Plaintiffs argue for remand. Doc. 10. In the second, Blue Cross asks that Plaintiffs' claims be dismissed. Doc. 13. For the following reasons, Plaintiffs' motion to remand is denied and Blue Cross's motion to dismiss is granted in part and denied in part.

### A

Plaintiffs say Blue Cross's notice of removal "failed to plausibly allege that the proposed class satisfies" the Class Action Fairness Act's $5 million amount in controversy requirement. Doc. 11 at 1. They also note that CAFA permits—or even requires—remand in some highly local cases. *Id.* Plaintiffs' contentions are unavailing. Blue Cross's allegations are sufficient, and remand is not appropriate.

#### 1

The Class Action Fairness Act expanded federal courts' jurisdiction over certain class actions. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014); *see also* 28 U.S.C. §§ 1332(d)(1). A federal court has jurisdiction over a putative class if it "has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee*, 574 U.S. at 84–85; 28 U.S.C. §§ 1332(d)(2), (d)(5)(B). Plaintiffs dispute only one of these requirements, arguing that Blue Cross has not plausibly alleged that amount in controversy exceeds $5 million. Doc. 11 at 3.

"Amount in controversy" is a term of art in jurisdictional statutes. *Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 911 (10th Cir. 2016). It means roughly the same thing in CAFA as elsewhere. *Id.* at 912. A party invoking CAFA jurisdiction need only show that "a fact finder *might* legally conclude that damages exceed the statutory amount." *Id.* (citation and internal quotation marks omitted) (emphasis in original). Conversely, a court should only dismiss under this standard if it "appear[s] to a legal certainty that the claim is really for less than the

jurisdictional amount." *See id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)); *see also* 14B Wright & Miller, *Federal Practice and Procedure* § 3702 (5th ed. 2023).

No such certainty appears. Plaintiffs chip away at the probable value of their claim, but it remains plausible that they could recover at least $5 million. They note that Blue Cross assumed a "10,000-member class" and predicted that each putative member could recover "significant damages." Doc. 11 at 4 (citing Doc. 8 at 8). Yet Blue Cross's "methodology is flawed," Plaintiffs say, "because [it] offers no plausible allegations that the number of class members is 10,000 or that the out-of-pocket costs for each [putative] member" would multiply to $5 million. Despite those efforts to whittle the amount beneath the jurisdictional amount, Plaintiffs at no point establish that they are seeking less than $5 million—nor that it is legally certain that they could not recover more.

The parties digress over Blue Cross's statement that at least 10,000 people were eligible for preventive care services. Doc. 11 at 4; Doc. 16 at 4; Doc. 19 at 2–3. Eligibility is not enough, Plaintiffs say. A putative member must also have been denied coverage. Doc. 11 at 4. That is true, *see* Doc. 1-1 at 6–7, but misses a larger point. Only individuals eligible for preventive care can be denied preventive care. In other words, at least 10,000 people clear the first requirement of putative class membership. And Blue Cross alleged that plenty of these people also clear the second requirement—that is, being denied coverage. It pled that "[o]n information and belief, at least [2,527] persons allegedly have been denied 100% preventive service coverage during a five-year period preceding this action." Doc. 1 at ¶ 19. It adequately expanded upon these allegations after being ordered to show cause. Doc. 8 at 3–6; Doc. 9. Doc. 11 at 4. And it pled that these putative members' claims were sufficiently expensive to drag the amount in controversy above $5 million. Doc. 1 at ¶¶ 18–19 (describing two named plaintiffs' claims).

These allegations lead "to the possibility that a jury might lawfully award relief" over $5 million. *Hammond*, 844 F.3d at 912. And this "legal possibility … is more than enough to trigger federal jurisdiction." *Id.* Some putative members may have been denied less expensive services, whereas others were denied more expensive services. *See* Doc. 11 at 4. It matters not. Blue Cross pled that the class is likely large enough, and the modal claim likely expensive enough, to put at least $5 million in controversy. CAFA's amount in controversy requirement

is satisfied. *Cf. Hammond*, 844 F.3d at 912 (calculating that "actual damages run at least $31.98 and perhaps $300 per person" and "at least 312,000 people" are plausibly in the class).

2

Plaintiffs do not establish that this dispute is so local to Kansas that a federal court must remand it to state court. 28 U.S.C. § 1332(d)(4). Nor does the dispute call for discretionary remand. *Id.* at § 1332(d)(3). Accordingly, Plaintiffs' requests for remand are denied.

CAFA broadens federal courts' jurisdiction, but it also contains several exceptions. *Speed v. JMA Energy Co., LLC*, 872 F.3d 1122, 1126 (10th Cir. 2017). A plaintiff seeking remand of a properly removed action must establish that these exceptions apply. *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1262 (10th Cir. 2014); *see also Dutcher v. Matheson*, 840 F.3d 1183, 1190 (10th Cir. 2016).

Plaintiffs argue for two such exceptions, one mandatory and the other discretionary. Doc. 11 at 1 (asserting that "[t]his is a class action focused on Kansas residents asserting claims for breach of contract under Kansas law against a Kansas insurance company" which "should be resolved in Kansas state court"); *see also id.* at 5. A court must remand "home-state" controversies, in which "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). But if only one-third are filing-state citizens, a district court may "decline to exercise jurisdiction under the discretionary exception in § 1332(d)(3)." *Speed*, 872 F.3d at 1126. Six factors shape that discretion. *Id.*

Take the mandatory exception first. Blue Cross agrees that most of its requirements are met. Doc. 16 at 7. Still, Blue Cross does not concede that "greater than two-thirds" of the putative class are Kansas citizens. *See* 28 U.S.C. § 1332(d)(4)(A); *see also* Doc. 16 at 7. Plaintiffs must therefore submit evidence that the putative class is more than two-thirds Kansan. *See Dutcher*, 840 F.3d at 1189–90; *see also Nichols v. Chesapeake Operating, LLC*, 718 F. App'x 736, 739 (10th Cir. 2018) (collecting cases); *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1238 (10th Cir. 2015) (citizenship is determined by domicile, not residence). They have not done so.

As Plaintiffs point out, Blue Cross implies that Kansas citizens are most of the class. Its "records show that more than 100 putative class members are citizens of states other than Kansas." Doc. 8 at 6. Merely "more than 100," in a potential class of thousands, is not very many. And Blue Cross emphasizes that it "is providing services so that 'Kansans are no longer limited to providers near their geographic location.'"[2] Doc. 16 at 7 n.3. These statements suggest that most putative class members are Kansas citizens, even if some are not.

Nonetheless, Plaintiffs must prove the putative class members' citizenship by a preponderance of the evidence. *See Dutcher*, 840 F.3d at 1189, 1190. They cannot, without more, rely on the argument that Blue Cross "has presented no contrary evidence to dispute the citizenship of the class." Doc. 19 at 5; *see Dutcher*, 840 F.3d at 1190; *Nichols*, 718 F. App'x at 739–41 (considering the development of the law across the circuits and rejecting "a rebuttable presumption of citizenship in the context of a CAFA exception invoked based on the mere allegation of residence"). And Plaintiffs do not provide anything more. They "presented the evidence [to which] they have access," Doc. 19 at 5, suggesting that Kansans are most of the putative class. But that suggestion is insufficient for Plaintiffs to satisfy their preponderance of the evidence burden. *See Dutcher*, 840 F.3d at 1189–90.

A court may also obtain discretion to remand a class action otherwise covered by CAFA. That discretion has prerequisites. One is evidence that "greater than one-third but less than two-thirds" of Plaintiffs' putative class members are Kansas citizens. *Speed*, 872 F.3d at 1127 (citation omitted). Once again, Plaintiffs do not carry their burden to provide that evidence. Just as they failed to carry their burden to show that greater than two-thirds of the putative class members are Kansas citizens when considering mandatory remand, they likewise fail to establish with evidence or inference that more than one-third of their putative class members are Kansans. *See generally* Doc. 19. Discretionary remand is therefore unavailable.

That does not end the matter, because Plaintiffs say that "class citizenship discovery should be permitted" if "the evidence to date [is

---

[2] This does not necessarily "contradict [Plaintiffs'] point." *Contra* Doc. 16 at 7. Kansans are people "born or living in Kansas." Collins Dictionary Online (last visited April 5, 2024), https://www.collinsdictionary.com/us/dictionary/english/kansan.

8

not] sufficient" and the case is not remanded. Doc. 19 at 5. Such discovery might clarify the citizenship of the putative class. Blue Cross protests that a "request for jurisdictional discovery must be supported by more than a mere hunch." Doc. 16 at 11 (quoting *Hemphill v. Pershing, LLC*, 2017 WL 3149290, at *4 (D. Kan. July 25, 2014)). As noted, Plaintiffs probably have more than a hunch. They merely lack enough evidence to cross the preponderance-of-the-evidence threshold.

A protracted dispute about jurisdictional discovery may yet be avoided. Plaintiffs note that they "can conduct … jurisdictional discovery as part of the general discovery process." Doc. 19 at 6. Given the ambiguities at this stage, Plaintiffs' second suggestion is more appropriate. *Cf. Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 (10th Cir. 2010) (noting that a district court abuses its discretion only if denying jurisdictional discovery prejudices a litigant). Plaintiffs may obtain appropriate discovery in federal court. Their motion for remand is denied without prejudice.

**B**

Blue Cross moves to dismiss Plaintiffs' claims, advancing four theories. The first, failure to state a claim, requires parsing the disputed insurance policy. The other three are largely merits-based challenges described in jurisdictional terms: standing, exhaustion, and mootness. While Plaintiffs lack standing to seek declaratory relief, none of these theories justify dismissal at this stage. As a result, Blue Cross's motion is granted in part.

**1**

Blue Cross says that Plaintiffs misread their contracts. In its view, the contracts require it to pay for preventive services only when required by the Affordable Care Act, specifically 42 U.S.C. 300gg-13. Doc. 13 at 3–4. Plaintiffs read the contracts differently, and believe Blue Cross agreed to pay for some services without reference to the ACA. Plaintiffs' interpretation is plausible, so they state a claim for breach of contract.

Kansas substantive law governs the parties' contractual dispute. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also* Doc. 13 at 3 (assuming Kansas law applies); Doc. 17 at 5 (same). If Kansas's law is ambiguous, a federal district court must look to the Kansas Supreme Court's rulings. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th

9

Cir. 2013) (citing *High Plains Nat. Gas Co. v. Warren Petroleum Co.*, 875 F.2d 284, 288 (10th Cir. 1989)). And "if no such rulings exist, [it] must endeavor to predict how the high court would rule." *Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007) (quoting *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006)).

Kansas's "primary rule" when "interpreting written contracts is to ascertain the intent of the parties" based on the plain, general, and common meaning of the words they used within the contract's four corners. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1186–87 (10th Cir. 2018) (applying Kansas law). If the terms of the contract are unambiguous, a court considers only the plain language of the contract without applying rules of construction. *Osterhaus v. Toth*, 249 P.3d 888, 896 (Kan. 2011); A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 56–57 (2012) ("Scalia & Garner").

Plaintiffs claim that Blue Cross breached its contractual agreement "to cover 100% of the costs of preventive services … obtained from a Contracting Provider." Doc. 1-1 at ¶ 2. The contract seems to require as much. Yet Blue Cross "denied coverage of Plaintiffs' preventive services obtained from Contracting Providers." *Id.* at ¶ 3. If Plaintiffs read the contract correctly, they have adequately pled a claim for breach of contract. *Malone v. Univ. of Kansas Med. Ctr.*, 552 P.2d 885, 888 (Kan. 1976); *see also Hill v. State*, 448 P.3d 457, 466 (Kan. 2019).

They have not, Blue Cross says, because "the plain and unambiguous language of the policy" permitted its actions. *See* Doc. 13 at 3. That language, in pertinent part, is as follows:

> **Preventive Health Benefits:** Each Insured is eligible to receive the following preventive services paid at 100% of the allowable charge when received from a Contracting Provider for preventive (i.e., not diagnostic or treatment) purposes. Preventive Health Services received from a Non-Contracting Provider *will be subject to the cost sharing requirements* (including copayments, coinsurance and deductible), applicable hereunder, *in a manner consistent with 42 U.S.C. 300gg-13* for:
>
> a. [certain United States Preventive Services Task Force recommendations];
>
> b. [certain recommended immunizations];

> c. [certain Health Resources and Services Administration recommendations]; and
>
> d. [certain preventive services for women].
>
> A list of the preventive services covered under this section is available on our website at www.bcbsks.com, or will be mailed to You upon request. You may request the list by calling the Customer Service number on Your Identification Card.

Doc. 13-1 at 18 (emphasis added); *see also* Doc. 13-2 at 18–19; Doc. 13-3 at 18–19.

The parties' dispute turns, at least in part, on the reference to Section 300gg-13. That statute creates a "minimum interval" within which an insurer must implement updated guidance. 42 U.S.C. § 300gg-13(b). Blue Cross says the interval applies to all preventive services. And it says it complied; Plaintiffs were just early. Doc. 13 at 5. They sought colonoscopies from contracting providers, but before Blue Cross implemented new guidance. So they were not "eligible to receive … preventive services paid at 100% of the allowable charge…." *See id.*; Doc. 1-1 at ¶ 12.

Plaintiffs disagree. They concede that non-contracting providers' services are subject to Section 300gg-13 and its "minimum interval." *See* Doc. 17 at 5 (services from non-contracting providers are subject to the interval). But Plaintiffs sought services from contracting providers, and in the parties' agreement, services from contracting providers are not obviously subject to the Section 300gg-13 interval. *Id.* at 6. In other words, Plaintiffs argue that the "minimum interval" (and the rest of Section 300gg-13) applies only to services received from non-contracting providers—meaning that any approved services provided by a contracting provider must immediately be covered.

Plaintiffs' understanding of the contract is plausible because the disputed paragraph creates two categories for preventive services. The first are those "received from a Contracting Provider," and for these services, Blue Cross agreed to pay "100% of the allowable charge." Doc. 13-1 at 18. The second category is preventive services "received from a Non-Contracting Provider," which may require cost-sharing. But cost-sharing for preventive services implicates the ACA. *See* 28 U.S.C. § 300gg-13 (providing that certain health plans "shall not impose any cost sharing requirements for" various enumerated services).

11

So Blue Cross imposes cost sharing only "in a manner consistent with 42 U.S.C. 300gg-13." *See* Doc. 13 at 4 ("In effect, this … provision exists to meet that statutory requirement [i.e., Section 300gg-13], incorporating it wholesale."). Blue Cross relies on the adverbial phrase in the second sentence, "in a manner consistent with 42 U.S.C. 300gg-13," to accomplish that end. The question is whether the adverbial phrase applies to all services, or only services "received from a Non-Contracting Provider."

The provision is unambiguous, so it is fair to rely on the text alone. *Osterhaus*, 249 P.3d at 896 (noting that Kansas courts do not resort to rules of construction unless they find ambiguity). The first sentence makes an insured person "eligible to receive … preventive services paid at 100% of the allowable charge," but only "when received from a Contracting Provider for preventive … purposes." Punctuation rules suggest that this is a complete thought about preventive services from contracting providers. *Barclays Bank PLC v. Poynter*, 710 F.3d 16, 21 (1st Cir. 2013) ("Each of these subsections contains an independent, complete thought and each ends with a period for punctuation."); *United States v. 12,918.28 Acres of Land in Webster Par.*, 61 F. Supp. 545, 552 (W.D. La. 1945) ("The period as a punctuation mark severs as distinctly as if there were two paragraphs."); *see also* B. Garner, Modern English Usage 752 (4th ed. 2016) (noting that a period "ends all sentences that are not questions or exclamations.").

And that is all the contract has to say about preventive services from contracting providers. Indeed, the second sentence begins with a new subject and contrasting language, "Preventive Health Services received from a Non-Contracting Provider." It uses passive voice in the verb "will be subject to," leading to the complement "the cost sharing requirements." Thus, a reader knows that these services are subject to certain cost sharing requirements—and not just cost sharing requirements, but also "copayments, coinsurance and deductible[s]."

A reader then arrives at the disputed adverbial phrase, which offers a caveat. Blue Cross will impose cost sharing requirements, but only those "applicable hereunder, in a manner consistent with 42 U.S.C. 300gg-13." Again, punctuation rules suggest that this is a complete thought. So services from a non-contracting provider are subject to cost sharing, as qualified by the adverbial phrase. *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) ("[A] limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately

follows."). Nothing about this requires a reader to backtrack through the paragraph and reference the first sentence or its subject.

Blue Cross offers several unpersuasive reasons to read the text another way. The sentences should be read together, it says, because Plaintiffs want a procedure that "comes from a list in the second sentence." Doc. 20 at 2. That list is lifted from Section 300gg-13. And "[t]he colon preceding the list says the procedures will be provided 'in a manner consistent with [Section 300gg-13],' making it a signpost for the list that follows." Doc. 20 at 2.

This argument reverses the proper flow of the sentence. The adverbial phrase refers to the verb ("will be") and its complement ("the cost sharing requirements"). This is so because the adverbial phrase describes "how something is to be done." *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 465–66 (7th Cir. 2020). Specifically, it explains *how* "Preventive Health Services received from a Non-Contracting Provider…will be subject to" certain cost sharing requirements. In this case, they will be subject to cost sharing requirements as allowed by Section 300gg-13. Cost sharing requirements are irrelevant in the first sentence, making the adverbial phrase inapposite.

Nor is the list necessary to complete the first sentence. The first sentence refers to "the following" preventive services without elaborating. It could mean the list attached to the second sentence. But it could also mean the "list of the preventive services covered under this section … available on [Blue Cross's] website." Doc. 13-1 at 18 (third sentence). In other words, one can understand the first sentence without ever referencing the second sentence.

Blue Cross also stresses that "[t]he statute has *nothing* to do with contracting or non-contracting providers." Doc. 30 at 3 (emphasis in original). True, but irrelevant. *See generally* 28 U.S.C. § 300gg-13. The proper focus is on the context of the parties' contract, where the statute has something to do with "Preventive Health Services received from a Non-Contracting Provider." It ensures those services "will be subject to" cost sharing requirements in a manner that complies with Section 300gg-13. The first sentence does not implicate that concern, because Blue Cross eschews cost-sharing and instead pays "100% of the allowable charge." Doc. 13-1 at 18.

Blue Cross finally tries to invoke the whole-text canon to support its contention that a reference to the statute in one subsection should

13

be imputed into the meaning and operation of all the other subsections. Doc. 20 at 3 (citing Scalia & Garner 167). In doing so, it misapprehends the purposes of the canon. The whole-text canon provides a rule of construction only when a text is ambiguous. *See Bruce v. Kelly*, 514 P.3d 1007, 1029 (Kan. 2022). The words the parties used, as set forth above, are not ambiguous, so Kansas courts would not resort to any of the canons of construction. *Osterhaus*, 249 P.3d at 896. The canon is an interpretive tool to for discerning the meaning of ambiguous text; it is not a license for a federal court to redraft the parties' agreement. The plain text of their agreement distinguishes contracting providers' services from non-contracting providers' services, and it is too late to revise their choice.

**2**

The other arguments, cast in jurisdictional terms, are only partially successful. Blue Cross's arguments that Plaintiffs will lack standing to certify certain classes do not persuade. Neither does Blue Cross's theory that Plaintiffs' declaratory judgment count is moot. But a related argument—that Plaintiffs lack standing to seek declaratory relief—is valid, meaning Blue Cross's motion to dismiss is granted in part.

**a.** Blue Cross's first standing argument is broad. It acknowledges that Plaintiffs can sue over their own injuries. *See* Doc. 13 at 8; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Still, Plaintiffs also seek to represent a class, one that includes individuals with potentially distinct injuries. Doc. 1-1 at ¶ 43. Blue Cross says this creates a standing issue, but it is merely a Rule 23 issue that must be raised, if at all, at a later stage.

Plaintiffs' putative class includes "all insureds who received preventive services from a Contracting Provider … for which [Blue Cross] denied 100% preventive service coverage." Doc. 1-1 at ¶ 43. But "the named Plaintiffs have each only received colonoscopies." Doc. 13 at 6. So it is problematic, Blue Cross says, that Plaintiffs "are including in their putative class insureds who received non-colonoscopy procedures." *Id.* In other words, Blue Cross contends that Plaintiffs' use of the term "preventive services" is too broad because it sweeps in people who received different preventive services than Plaintiffs.

This issue is premature. Of course, "standing is not dispensed in gross," meaning that "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for

example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). But Plaintiffs have standing to pursue all their claims when those claims are properly described. Blue Cross would describe Plaintiffs' claims as "colonoscopies," "immunizations," "screenings," and so on, because these are all types of preventive services available under Plaintiffs' policies. Doc. 13 at 5–6. This description is too narrow. Plaintiffs say Blue Cross breached its promise to pay for preventive services, not a promise to pay for one service or another. *Contra* Doc. 20 at 2. A plaintiff "denied 100% preventive service coverage" for their colonoscopy is harmed in the same way as a patient denied such coverage for a vaccination. Doc. 1-1 at ¶ 43. Thus, Blue Cross identifies a disjuncture between Plaintiffs and their putative class that "is more a matter of description than reality." 1 Newberg and Rubenstein on Class Actions § 2:6 (6th ed.). In reality, the contract references "preventive services." *See, e.g.*, Doc. 13-1 at 18. There is no reason to imagine that Plaintiffs' claims are distinct because they sought colonoscopies whereas potential class members may have sought one or more of the other services. To the extent that these differences matter, Rule 23—not Article III—addresses them. *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975).

**b.** Blue Cross's second standing argument also relates to the composition of Plaintiffs' putative class. The putative class members are, like Plaintiffs, Blue Cross customers. Doc. 1-1 at ¶ 43. Blue Cross says its customers must exhaust "their appellate procedures as set forth in the policy" before filing suit. Doc. 13 at 6. Plaintiffs are customers who "exhausted" their appellate procedures after being denied full coverage for colonoscopies. *Id.* But Plaintiffs also intend for their putative class to include Blue Cross customers who sought *other* procedures, and who may not have exhausted their contract-based remedies. *See* Doc. 1-1 at ¶ 46. In Blue Cross's view, this means that Plaintiffs "are simply not litigating their personal rights." Doc. 13 at 7 (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997)). That is, Plaintiffs claims are not typical within their putative class: Plaintiffs have exhausted claims based on colonoscopy requests, whereas some of the putative members might have unexhausted claims, based on other requests. At a very narrow level of generality, then, Plaintiffs might not have suffered the precise injury suffered by some of the people in their putative class. Blue Cross sees this as a standing argument. But like Blue Cross's other standing argument, it prematurely advances a Rule 23 issue.

The Article III standing inquiry and Rule 23 both modulate the scope of a plaintiff's controversy. 1 Newberg and Rubenstein on Class Actions § 2:6 (6th ed.). Courts can deal with this overlap in two ways. *See Gratz v. Bollinger*, 539 U.S. 244, 263 n.15 (2003) (identifying this issue without resolving it). They can apply Article III and conclude that a plaintiff has standing to redress only injuries akin to his or her own. Or courts can apply Rule 23 and determine whether a putative class includes people with dissimilar injuries. Most courts choose Rule 23—and for good reason. 1 Newberg and Rubenstein on Class Actions § 2:6 (6th ed.). Rule 23 forces a class to shed putative members with unique injuries. Fed. R. Civ. P. 23(a)(3). It does so without asking a court to adjudicate constitutional questions. *Cf. Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) (stating that "[t]he Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of").

Thus, Blue Cross raises a Rule 23 issue that can be addressed without implicating Article III. It characterizes the problem this way: "[T]hat [Plaintiffs] purport to represent a class does not allow them to claim breach of an agreement as to services they personally never sought…." Doc. 13 at 7. There is no reason to turn this potential issue into an Article III problem because the alleged breach is identical in each context. There are no "claims against non-colonoscopy procedures," *contra id.*, there are only claims against Blue Cross's alleged breach. If some of those claims are nonetheless meaningfully distinct from Plaintiffs' claims, Rule 23 will exclude them. And Plaintiffs have standing to pursue their own claims against Blue Cross's alleged breach. At this stage, that is all they need. *See Lujan*, 504 U.S. at 560–61.

To be sure, differences between putative class members and Plaintiffs may become relevant if Plaintiffs seek to certify a class. That some members of the putative class have unexhausted claims might exclude them from the class and thus undermine numerosity. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."); *see also Lewis v. Becerra*, No. CV 18-2929, 2022 WL 1262122, at *12 (D.D.C. Apr. 28, 2022) (revising numerosity analysis to exclude plaintiffs with unexhausted claims). Or it might create a typicality problem, as when the named plaintiffs have

exhausted their claims but most putative members have not. *E.g.*, *Abdul-Baaqiy v. Fed. Nat'l Mortg. Ass'n*, 149 F. Supp. 3d 1, 11 (D.D.C. 2015). But that is a potential problem that may arise in the future. It does not mean that the named plaintiffs lack standing to assert their own claims at this time. And at this point, that is all the named plaintiffs need. To be sure, they may later attempt to certify a class. In that case, Blue Cross has identified an issue with certification under Rule 23 rather than standing. *See Gratz*, 539 U.S. at 265 ("[T]he University's use of race in undergraduate transfer admissions does not implicate a *significantly different set of concerns* than does its use of race in undergraduate freshman admissions.") (emphasis added). And Plaintiffs have yet to request certification.

**c.** Plaintiffs seek "a declaration clarifying [Blue Cross's] contractual obligations so that, going forward, Plaintiffs can make more informed personal medical decisions…" Doc. 1-1 at 17; Doc. 17 at 14 (referencing "active polices"). Blue Cross argues that Plaintiffs' declaratory relief request is moot because Plaintiffs have new contracts and have not been denied any services or reimbursements under the now-applicable contracts. Plaintiffs' new contracts do not moot their request for declaratory relief; the real issue is their standing to seek prospective relief based on the new contracts. Lack of standing deprives a court of subject matter jurisdiction just as mootness does, so Blue Cross's motion to dismiss is granted in part.

Blue Cross's contention, at its core, is grounded in *Lujan*'s recognition that an uninjured plaintiff lacks standing. *Lujan*, 504 U.S. at 560–61. It is possible that an injured plaintiff may have standing, but lose it because, for example, he or she is made whole after being injured. If that happens while a plaintiff litigates his or her injury, a plaintiff's claim may be "moot." *See Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021). Formally, then, a claim is moot if "an intervening circumstance deprives the plaintiff of a personal stake" such that the "plaintiff no longer suffers a redressable actual injury." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (citations and internal quotation marks omitted). Redressable injuries "in the context of an action for declaratory relief" must constitute "more than a retrospective opinion that [one] was wrongly harmed by the defendant." *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011). If that harm is not ongoing, a declaratory judgment is pointless. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983).

17

Plaintiffs' declaratory judgment request does not and cannot seek retrospective relief because the policies under which Plaintiffs were denied coverage "expire[d] on October 1, 2022." Doc. 13 at 9. Plaintiffs remain Blue Cross customers, subject to new contracts with identical preventive coverage terms. Doc. 17 at 14. Thus, Plaintiffs seek prospective relief: clarification of their rights under "active policies that contain the same coverage language." *Id.*; *see also* Doc. 1-1 at 16–17 (requesting clarification of Blue Cross's "contractual obligations … going forward"). Since they seek prospective relief, their claims are not properly described as moot. Nonetheless, they lack standing to seek declaratory relief on their current contracts. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (reiterating that a future injury must be "certainly impending" before it constitutes injury-in-fact). Plaintiffs do not allege that Blue Cross has breached these new policies, meaning that they have yet to suffer an injury-in-fact because of their new policies. Without such an injury-in-fact, Plaintiffs lack standing to seek a declaratory judgment clarifying the meaning of the new policies.

### III

For the foregoing reasons, Plaintiffs Motion to Remand, Doc. 10, is DENIED without prejudice. Blue Cross's Motion to Dismiss, Doc. 13, is GRANTED IN PART and DENIED IN PART.

It is so ordered.

Date: April 5, 2024           　s/ Toby Crouse　　　　
　　　　　　　　　　　　　　　Toby Crouse
　　　　　　　　　　　　　　　United States District Judge